FILED

2009 Feb-13  AM 09:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JIANN MIN CHANG** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 5:07-cv-01071-CLS** |
| | ) | |
| **ALABAMA AGRICULTURAL &** | ) | |
| **MECHANICAL UNIVERSITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This is an employment discrimination case.  Plaintiff, Dr. Jiann Min Chang,
was formerly employed as a temporary assistant professor of physics by Alabama
Agricultural & Mechanical University ("defendant" or "Alabama A&M").  In April
of 2006, defendant advised plaintiff that it would not renew his annual employment
contract and his last day of employment would be May 6, 2006.  Plaintiff asserts that
defendant discriminated against him on the basis of his race, Asian, and on the basis
of his national origin, Taiwanese, when denying his requests for permanent
employment, denying his requests for tenure, apportioning him a disproportionately
heavy workload, paying him less than similarly situated professors who were not
Asian or of Taiwanese descent, failing to allow him to participate on University
committees and, ultimately, terminating his employment.[1]  Plaintiff brings his claims

---

[1] *See* doc. no. 1 (Complaint), at ¶¶ 9, 12-13.

under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, the Civil Rights Act of 1866, 42 U.S.C. § 1981, and 42 U.S.C. § 1983.[2]  The case presently is before the court on defendant's motion for summary judgment as to all claims asserted in plaintiff's complaint.[3]  Upon consideration of the pleadings, the parties' briefs, and the evidence of record, the court concludes that defendant's motion is due to be granted.

## I.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).[4]  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

---

[2] *Id.* at ¶ 1.

[3] Doc. no. 13.

[4] Rule 56 was recently amended in conjunction with a general overhaul of the Federal Rules of Civil Procedure.  The Advisory Committee was careful to note, however, that the changes "are intended to be *stylistic only*."  Adv. Comm. Notes to Fed. R. Civ. P. 56 (2007 Amends.) (emphasis supplied).  Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version.

In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.

The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable [factfinder] to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (internal quotations and citation omitted) (bracketed text suppled).

## II.  SUMMARY OF FACTS

Plaintiff initially was hired by defendant as a graduate assistant in 1993; in September of 1997, he was offered the position of "temporary assistant professor" of physics.[5]  A temporary assistant professor is employed for a term of one year, pursuant to an employment contract between the professor and defendant, which can be renewed at defendant's option each academic year.[6]  Plaintiff continued in that capacity for almost nine years, until May of 2006.

Throughout the duration of his employment, plaintiff understood that he was not a permanent employee, and that he was not in a "tenure track" position.[7]

---

[5]Doc. no. 15, Exhibit A (Deposition of Dr. Jiann Min Chang), at 34, 43.

[6]*Id.*

[7]*Id.*

Presumably in light of that fact, plaintiff submitted five separate requests between the years 2001 and 2003 to be hired in a permanent, tenure track capacity.[8]  Plaintiff, however, was never offered a permanent position on the Alabama A&M faculty.[9] After 2003, he made no further attempts to secure a tenure track position.[10]

Normally, plaintiff was required to teach twice as many ("double" the number of) courses as other professors, but was paid less than his colleagues.[11]  During the Spring semester of 2006, however, plaintiff taught less than a full load of courses.[12] Moreover, plaintiff's salary for the "2005-2006 academic year" was agreed to between plaintiff and defendant on August 15, 2005 — the date plaintiff entered into his most recent employment contract with defendant.[13]

Defendant informed plaintiff, on April 28, 2006, that it would not renew his employment contract for the following academic year.[14]  The parties construe the April 28, 2006 letter differently.  Plaintiff considered the letter to be a notice of termination.  Defendant argues that plaintiff was not terminated during a time period

---

[8]*Id.* at 56-57.

[9]*Id.*

[10]*Id.*

[11]*See* doc. no. 15, Exhibit A (Deposition of Dr. Jiann Min Chang), at 133-34.  *See also* doc. no. 1 (Complaint), at ¶¶ 9, 11.

[12]*Id.*

[13]Doc. no. 15, Exhibit B ("2005-06 Notice of Continued Employment").  The parties do not contest that the August 15, 2005 contract constitutes a binding employment agreement.

[14]*See* doc. no. 15, Exhibit E (Letter to plaintiff dated April 28, 2006).

covered by the August 15, 2005 employment contract, and that defendant simply chose not to renew its contract with plaintiff. In viewing the facts in a light most favorable to plaintiff, however, the court will proceed under the assumption that plaintiff's employment was terminated.

The relevant events preceding plaintiff's termination are not in dispute. During the Spring semester of 2006, plaintiff taught a physics course.[15] One of plaintiff's students, Tiffany Jones, was absent from regularly scheduled class meetings between February 15 and March 15, 2006.[16] She did not give plaintiff any prior notice of those absences.[17] On March 1, 2006, plaintiff administered a mid-term examination, and Jones was not present to take it.[18]

On March 15, 2006, Jones approached plaintiff after class, and demanded that she be allowed to take the mid-term examination.[19] She presented plaintiff with a document she declared to be a "University-approved" medical excuse, but she would not allow plaintiff to either examine the document or to make a copy for his records.[20] Plaintiff did not accept Jones's medical excuse, and refused to allow her to take the

---

[15]*See* doc. no. 15, Exhibit A (Deposition of Dr. Jiann Min Chang), at 150-53.

[16]*Id.*

[17]*Id.*

[18]*Id.*

[19]*Id.*

[20]*Id.* at 156-61.

exam.[21]

Undeterred by plaintiff's rejection, Jones appealed to plaintiff's superior, Dr. Shirley Houzer, Vice President of Academic Affairs.[22]  Jones thus circumvented the student grievance policy of Alabama A&M by directly lodging her complaints with Dr. Houzer; even so, Dr. Houzer possessed the authority to address student grievances.[23]  Dr. Houzer investigated Jones's complaint, determined that she had a valid, University-approved, medical excuse, and placed a telephone call to plaintiff for the purpose of inquiring about his reasons for denying Jones the right to sit for the mid-term exam.[24]  A professor, such as plaintiff, does not have the unilateral discretion to disregard a University-approved medical excuse.[25]

During the telephone conversation with Dr. Houzer, plaintiff became agitated, and raised his voice.  Dr. Houzer perceived his conduct as rude and insubordinate.[26] Plaintiff recalled that, upon having his decision questioned by Dr. Houzer, he responded, "I decide.  I decide.  If you say, Dr. Chang, you should not give her a test — you should give her a test, this I say.  You say, okay, you teach.  You come here.

---

[21]*See* doc. no. 15, Exhibit A (Deposition of Dr. Jiann Min Chang), at 156-61.

[22]*See* doc. no. 15, Exhibit C (Deposition of Dr. Shirley Houzer), at 22-24, 30.

[23]*Id.* at 45, 94.

[24]*See* doc. no. 15, Exhibit C (Deposition of Dr. Shirley Houzer), at 29-32.

[25]*Id.* at 117-18.

[26]*Id.* at 39-44.

I quit."[27]  Shortly after that exchange, plaintiff abruptly terminated the call.

Following her conversation with plaintiff, Dr. Houzer drafted a letter directing plaintiff to administer the mid-term examination to Jones, and informing him that failure to do so would result in the termination of his employment.[28]  This letter was hand-delivered to plaintiff by a uniformed campus policeman, a method of delivery Dr. Houzer had not previously employed.[29]  Despite the fact that Dr. Houzer did not have the authority to fire plaintiff, he nevertheless complied with her mandate, and allowed Jones to take the exam the following day.[30]  Plaintiff later communicated to Dr. Houzer that he had complied with her instructions.[31]

Dr. Houzer believed that plaintiff's reaction to her intervention in the Jones matter was tantamount to insubordination,[32] and she does not tolerate insubordination from a professor.[33]  Following the resolution of the Jones situation, Dr. Houzer recommended to the President of Alabama A&M that plaintiff's employment contract not be renewed, because he had a history of rude, aggressive, and insubordinate behavior.[34]  The President, who had the unilateral discretion to make the decision

---

[27]Doc. no. 15, Exhibit A (Deposition of Dr. Jiann Min Chang), at 174-75.

[28]*See* doc. no. 15, Exhibit D (Letter to plaintiff dated March 15, 2006).

[29]*See* doc. no. 15, Exhibit C (Deposition of Dr. Houzer), at 38.

[30]*Id.* at 92-94.

[31]*Id.* at 54.

[32]*Id.* at 55-56.

[33]*Id.* at 62-63.

[34]*Id.* at 55-56.

regarding plaintiff's employment, agreed with Dr. Houzer that plaintiff should not be retained by Alabama A&M.  Approximately five weeks after Jones was allowed to take the mid-term, plaintiff received the April 28, 2006 letter informing him that the University would not renew his contract for the following academic year, and that his teaching services would no longer be needed after May 6, 2006, the end of the Spring term.[35]  Plaintiff sent a letter of apology to Dr. Houzer, and requested that his employment be reinstated.[36]  His request was rejected.

Defendant replaced plaintiff with Dr. Ashok Batra, an individual of Asian-Indian descent.[37]

## III.  DISCUSSION

### A.    Plaintiff's §§ 1981 and 1983 Claims

Defendant argues that, as a state university, it is an instrumentality of the State of Alabama, and, consequently, it is absolutely immune from suit under the Eleventh Amendment to the United States Constitution.

The Eleventh Amendment limits the power of federal courts to hear suits instituted by private litigants against a state.  The Amendment itself is quite brief, containing only forty-three words:  its full text provides that "The Judicial Power of

---

[35] *See* doc. no. 15, Exhibit E (Letter to plaintiff dated April 28, 2006).

[36] *See* doc. no. 15, Exhibit F (Plaintiff's letter to Dr. Houzer).

[37] *See* doc. no. 15, Exhibit A (Deposition of Dr. Jiann Min Chang), at 94.

the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.

Despite the Amendment's brevity and clarity of expression — explicitly denying federal courts the power to decide suits against states brought by only two classes of plaintiffs, "Citizens of another State" or "Citizens or Subjects of any Foreign State" — the Supreme Court has layered a case law gloss on the Amendment's language that "is replete with historical anomalies, internal inconsistencies, and senseless distinctions."  Howard Fink and Mark V. Tushnet, *Federal Jurisdiction*:  *Policy and Practice* 137 (1984).

For example, the Supreme Court long ago interpreted the Amendment as barring federal court suits against a state by its own citizens.  *Hans v. Louisiana*, 134 U.S. 1, 13-15 (1890) (holding that the ancient doctrine of sovereign immunity barred a person from suing his own state in federal court, even when the basis of the claim was a federal question arising under the laws or Constitution of the United States); *see also Edelman v. Jordan*, 415 U.S. 651, 662-663 (1974) ("[T]his Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State.").

Defendant argues that plaintiff's § 1981 and § 1983 claims are barred by

Eleventh Amendment immunity. *Cf. Will v. Michigan Department of State Police*, 491 U.S. 58, 70-71 (1989) (holding that entities with Eleventh Amendment immunity, including states and state agencies, are not "persons" subject to liability under § 1983); *Alabama A&M University v. Jones*, 895 So. 2d 867, 873 (Ala. 2004) (noting that Alabama A&M University is an instrumentality of the State of Alabama). *See also Sessions v. Rusk State Hospital*, 648 F.2d 1066, 1069 (5th Cir. 1981) ("Section 1981 contains no congressional waiver of the state's eleventh amendment immunity. This indicates that Congress did not intend by the general language of the Civil Rights Act of 1871 to invoke its fourteenth amendment power.").[38]

Plaintiff failed to respond to defendant's arguments on this point. Issues and contentions not raised in a party's brief are deemed abandoned. *See*, *e.g.*, *Chapman v. AI Transport* 229 F.3d 1012, 1027 (11th Cir. 2000) (*en banc*) ("Parties opposing summary judgment are appropriately charged with the responsibility of marshaling and presenting their evidence before summary judgment is granted, not afterwards."); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned"); *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (holding that a district court can

---

[38]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

"properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment") (citing *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 269 (7th Cir. 1986) (holding that a ground not pressed in opposition to a motion for summary judgment is to be treated by the district court as abandoned)). *Cf. Greenlaw v. United States*, --- U.S. ----, 128 S. Ct. 2559, 2564 (2008) ("In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present."). Therefore, plaintiff is deemed to have abandoned his claims brought under § 1981 and § 1983. Even if he had not done so, defendant is correct in arguing that those claims are barred by Eleventh Amendment immunity, and defendant is entitled to summary judgment as to those claims.

**B.    Plaintiff's Title VII Claims**

On the other hand, plaintiff's Title VII claims are not barred by the Eleventh Amendment. "Congress unequivocally expressed its intent to abrogate the states' Eleventh Amendment immunity when it amended Title VII to cover state and local governments." *In re Employment Discrimination Litigation Against State of Alabama*, 198 F.3d 1305, 1317 (11th Cir. 1999).

Plaintiff, nevertheless, concedes that many of his Title VII claims — *i.e.*, those

that are premised on his failed requests for permanent employment, defendant's denial of his requests for tenure, being apportioned a disproportionately heavy workload, being paid less than other professors, and defendant's refusal to allow him to participate on University committees — are "time barred."[39]  As such, defendant's motion for summary judgment is due to be granted as to those claims.

As a consequence, only plaintiff's Title VII claim for discriminatory termination remains to be adjudicated.

### 1.    Plaintiff's discriminatory termination claim

Proving that an employer relied on a plaintiff's race or national origin when terminating his employment is rarely a straightforward undertaking.  Stated differently, a plaintiff's case generally rests entirely on circumstantial evidence, because direct evidence of an employer's intent or motivation often is either unavailable or difficult to acquire.  *See Sheridan v. E.I. DuPont De Nemours & Co.*, 100 F.3d 1061, 1071 (3rd Cir. 1996) (*en banc*).[40]  Such is the case here.

---

[39]Doc. no. 18 (Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment), at 15.

[40]Direct evidence is generally defined as evidence which, if believed, proves the existence of a fact in issue without the need of an inference or presumption. *See, e.g.*, *Bass v. Board of County Commissioners*, 256 F.3d 1095, 1111 (11th Cir. 2001) (holding that the term "direct evidence," when used in the context of Title VII race discrimination claim, "refers to a type of evidence which, if true, would require no inferential leap in order for a court to find discrimination"); *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998) ("Direct evidence, by definition, is evidence that does not require . . . an inferential leap between fact and conclusion."); *Burrell v. Board of Trustees of Georgia Military College*, 125 F.3d 1390, 1393 (11th Cir. 1997) (defining direct evidence of discrimination as evidence which, "if believed, proves [the] existence of [a] fact in issue without inference or presumption"); *Merritt v. Dillard Paper Co.*, 120 F.2d 1181, 1189 (11th

12

Federal courts typically evaluate the sufficiency of circumstantial evidence using some variant of the framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and elaborated in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *See also St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993). As Justice O'Connor observed in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), "the entire purpose of the *McDonnell Douglas prima facie* case is to compensate for the fact that direct evidence of intentional discrimination is hard to come by." *Id.* at 271 (O'Connor, J., concurring).

Under the *McDonnell Douglas* framework, plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at

---

Cir. 1997) (same); *Earley v. Chamption Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) (same); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 n.6 (11th Cir. 1987) (same); *Lee v. Russell County Board of Education*, 684 F.2d 769, 774 (11th Cir. 1982) ("Where the evidence for a *prima facie* case consists . . . of direct testimony that defendants acted with a discriminatory motivation, if the trier of fact believes the *prima facie* evidence the ultimate issue of discrimination is proved; no inference is required."). *See generally Black's Law Dictionary* 577 (7th ed. 1999) (defining "direct evidence" as "[e]vidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption.").

In the context of employment discrimination cases, direct evidence of an employer's intent to discriminate on the basis of some prohibited characteristic is more specifically defined as "evidence which reflects 'a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee.'" *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999) (quoting *Carter*, 132 F.3d at 641 (in turn quoting *Caban-Wheeler v. Elsea*, 904 F.2d 1549, 1555 (11th Cir. 1990)). As such, "direct evidence of discrimination is powerful evidence capable of making out a *prima facie* case essentially by itself." *Jones v. Bessemer Carraway Medical Center*, 151 F.3d 1321, 1323 n.11 (11th Cir. 1998) (*per curiam*). In summary, "[t]o amount to direct evidence, a statement must: (1) be made by a decisionmaker; (2) specifically relate to the challenged employment decision; and (3) reveal blatant discriminatory animus." *Chambers v. Walt Disney World Co.*, 132 F. Supp. 2d 1356, 1364 (M.D. Fla. 2001). No piece of evidence before this court meets the criteria for "direct" evidence.

802; *see also Burdine*, 450 U.S. at 253-54 & n.6.  The plaintiff's burden to initially satisfy the elements of a *prima facie* case is not great.  *Burdine*, 450 U.S. at 253 ("The burden of establishing a *prima facie* case . . . is not onerous."); *see also*, *e.g.*, *Turlington v. Atlanta Gas Light Co.*, 153 F.3d 1428, 1432 (11th Cir. 1998) ("[A] plaintiff's burden in proving a *prima facie* case is light."); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (*per curiam*) ("Demonstrating a *prima facie* case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference [sic] [*give rise to a rebuttable presumption*] of discrimination.") (alteration added).

"The effect of the presumption of discrimination created by establishment of the *prima facie* case is to shift to the employer the burden of producing legitimate, non-discriminatory reasons for the challenged employment action."  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (citing *McDonnell Douglas*, 411 U.S. at 802; *Burdine*, 450 U.S. at 254); *see also*, *e.g.*, *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002) (same).

To rebut the presumption of intentional discrimination, "the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the [contested employment decision]."  *Burdine*, 450 U.S. at 255.  If a defendant carries its burden of producing "admissible evidence which would allow the trier of fact

14

rationally to conclude that the employment decision had not been motivated by discriminatory animus," *id.* at 257, the presumption of discrimination created by the *prima facie* case "drops from the case," and "the factual inquiry proceeds to a new level of specificity." *Id.* at 255 & n.10.

The burden then shifts to the plaintiff to "come forward with evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision," but merely pretext for intentional discrimination. *Combs*, 106 F.3d at 1528 (citing *Burdine*, 450 U.S. at 256; *McDonnell Douglas*, 411 U.S. at 804). *Cf. Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000) (holding in the context of a Rule 50 motion that "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."). If a plaintiff does so, then he or she "is entitled to survive summary judgment." *Combs*, 106 F.3d at 1529. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves*, 530 U.S. at 143.

A *prima facie* case of a claim of discriminatory termination based on upon

national origin or racial discrimination requires proof of the following four elements: (1) plaintiff is of Asian racial stock, and he was either born in Taiwan or is of Taiwanese descent; (2) he was qualified to perform the duties of the position he occupied on the date of his termination; (3) he was fired; and (4) "he was replaced by a person outside his protected class or was treated less favorably than a similarly-situated individual outside his protected class." *Maynard v. Board of Regents of the Divisions of Universities of Florida Department of Education*, 342 F.3d 1281, 1289 (11th Cir. 2003) (citing *McDonnell Douglas*, 411 U.S. at 802).

It is undisputed that plaintiff has established the first three elements of a *prima facie* case: he was a member of a protected group; he was qualified to work as a temporary assistant professor of physics; and his employment with defendant was terminated.  Defendant focuses on the fourth element, and argues that plaintiff cannot establish a *prima facie* case because he was replaced by a person within his protected group, and that plaintiff has not presented any evidence that another employee outside his protected group was accused of the same or similar conduct as plaintiff, but was not terminated.  This court agrees.

Plaintiff attempts to counter the first of these arguments by noting that he is of "Oriental ethnicity," while Dr. Batra is "Asian-Indian."[41]  Based on that premise,

---

[41]Doc. no. 18 (Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment), at 17.

plaintiff contends that he is of a different protected group than that to which Dr. Batra belongs.   Plaintiff, however, failed to cite any legal authority in support of his position.   The court will not give consideration to arguments that are not fully developed or bolstered with legal authority.  *See U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007) (refusing to address a party's "perfunctory and underdeveloped argument") (citing *Flanigan's Enterprises*, *Inc. v. Fulton County*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that "fail[ure] to elaborate or provide any citation of authority in support [of an argument]" results in waiver)).  *See also Lyes v. City of Riviera Beach, Fla.*, 126 F.3d 1380, 1388 (11th Cir. 1997) (explaining that "the onus is upon the parties to formulate arguments"); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it.").

Plaintiff's argument is also without merit.  As defendant correctly notes, an individual from the Indian Subcontinent, such as plaintiff's replacement, Dr. Batra, and an individual such as plaintiff, who was either born in Taiwan, or who is of Taiwanese descent, are *both* classified as "Asian or Pacific Islander" for purposes of Title VII.  The pertinent federal regulations provide that:

> Where designation of persons by race, color or national origin is required, the following designations shall be used . . . (3) Asian or

> Pacific Islander.  A person having origins in any of the original peoples of the Far East, Southeast Asia, the Indian Subcontinent, or the Pacific Islands.  This area includes, for example, China, Japan, Korea, the Philippine Islands, and Samoa.

28 C.F.R. § 42.402(e)(3).  *See also*, *Sun v. AT&T Technologies, Inc.*, Civil No. C84-1352, 1985 WL 1783, at *4 (N.D. Ga. April 29, 1985) (holding that a plaintiff of "Oriental" national origin, whose job was later filled by an "Asian from India," did not demonstrate that he was replaced by a person outside his protected class).  Therefore, the court concludes that plaintiff has failed to show that he was replaced by an individual outside his protected class.

In arguing that defendant treated other individuals outside plaintiff's protected class more favorably, plaintiff concedes that there is no evidence of record that *any* employee of defendant was accused of the same or similar conduct, but was not terminated for the offense.[42]  Plaintiff, instead, argues that he need not provide evidence of such a similarly situated employee, because defendant purportedly violated its own policies when terminating plaintiff's employment.  In support of that argument, plaintiff relies solely on *Byrd v. Lakeshore Hospital*, 30 F.3d 1380 (11th Cir. 1994), a case in which the Eleventh Circuit reversed a district court's dismissal of an individual's claim under the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k).  *See* 30 F.3d at 1383-34.

---

[42]*See* doc. no. 18 (Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment), at 17-19.

Plaintiff overstates the holding and applicability of *Byrd*. The plaintiff in *Byrd* missed several days of work due to complications during her pregnancy, but her absences were not in excess of her employer's "sick leave policy." *Id.* at 1381, 1383. The plaintiff was, nevertheless, terminated because of those pregnancy-related absences. *Id.* The district court concluded that the plaintiff in *Byrd* could not maintain her claim because she failed to come forward with evidence that a similarly situated individual, who was not pregnant, was retained despite absences from work due to illness. *Id.* at 1381. The Eleventh Circuit disagreed, noting that plaintiff could also establish the presumption that she was treated less favorably than an individual outside her protected class by "demonstrating that [her employer's sick leave policy] *in practice* has been applied unequally to pregnancy-related conditions." *Byrd*, 30 F.3d at 1383 (bracketed text supplied) (emphasis in original). The Eleventh Circuit expressly stated that the effect of its decision in *Byrd* "is simple: it is a violation of the [Pregnancy Discrimination Act] for an employer to deny a pregnant employee the benefits commonly afforded temporarily disabled workers in similar positions, or to discharge a pregnant employee for using those benefits." *Id.* at 1383-34 (bracketed text supplied).

This court finds that the facts and holding of *Byrd* are distinguishable from the present action, and its holding is not dispositive of the issues here.

That said, and assuming for the sake of argument that plaintiff's premise is a correct statement of the law — *i.e.*, that he could successfully demonstrate the fourth element of a *prima facie* case of discriminatory termination by showing that defendant violated its policies in terminating his employment — there is no evidence of record to support such a theory.

It was within Dr. Houzer's purview to recommend to the President of Alabama A&M that plaintiff's employment contract not be renewed, the President had the unilateral authority to make such a decision, and the President's decision was properly communicated to plaintiff in a letter from Dr. Houzer.  The undisputed evidence clearly establishes that *defendant* did not run afoul of its own policies or procedures.

Rather, plaintiff argues that Tiffany Jones, a disgruntled *student*, did not follow defendant's policy in reporting her grievance directly to Dr. Houzer, and it is that deviation from defendant's policies with which plaintiff takes issue.  Defendant requires its students to report complaints regarding their professors first to the department chair, next to the dean of the school, and finally to Dr. Houzer.  Jones's deviation from that policy — one requiring *students* to take certain actions — is wholly unrelated to defendant's policies regarding the termination of a temporary assistant professor.  Stated differently, a student's departure from a policy requiring

20

*students* to follow certain procedures is not tantamount to an action by *defendant* concerning plaintiff's termination.

Generally, a plaintiff who is discharged for misconduct — in this case, rude and disrespectful statements to his supervisor — must provide evidence tending to show that the conduct for which he was terminated was *nearly identical* to that engaged in by an employee outside his protected class who was retained by the employer. *See*, *e.g.*, *Williams v. Motorola, Inc.*, 303 F.3d 1284, 1293 (11th Cir. 2002). As noted above, plaintiff concedes that no such evidence is before this court.

Because plaintiff has neither demonstrated that he was replaced by someone outside his protected class, nor that he was treated less favorably than a similarly-situated individual outside his protected class, plaintiff has not met his burden to show a *prima facie* case of discriminatory termination, and this court's analysis properly ends here. *See*, *e.g.*, *Maynard*, 342 F.3d at 1289 (to establish a *prima facie* case of discriminatory termination, a plaintiff must show that "he was replaced by a person outside his protected class or was treated less favorably than a similarly-situated individual outside his protected class"). As such, defendant is entitled to summary judgment on plaintiff's discriminatory termination claim.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is due

to be GRANTED.  An appropriate order, consistent with this memorandum opinion,

will be entered contemporaneously herewith.

DONE this 13th day of February, 2009.

_____

United States District Judge